UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Metro Sales, Inc.,                                          Civil No. 15-3233 (DWF/JSM)

             Plaintiff,

v.                                                            **MEMORANDUM**
                                                                 **OPINION AND ORDER**

Core Consulting Group, LLC and
Rodger Mohagen,

             Defendant.

_____

Bryan A. Welp, Esq., and Karla M. Vehrs, Esq., Lindquist & Vennum LLP, counsel for Plaintiff.

Kasey D. McNary, Esq., and Ronald H. McLean, Esq., Serkland Law Firm, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Transfer Venue brought by Core Consulting Group, LLC ("Core Consulting") and Rodger Mohagen ("Mohagen") (collectively, "Defendants"). (Doc. No. 16.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

This dispute arises from a business relationship between Defendants and Metro Sales, Inc. ("MSI"). MSI is a Minnesota corporation that provides and services office equipment such as copiers, printers, and scanners. (Doc. No. 1 ("Compl.") ¶ 1.) MSI's

principal place of business is in Minneapolis, Minnesota. (*Id.*) Core Consulting is a North Dakota limited liability company that provides consulting services to businesses in connection with Employee Stock Ownership Plans ("ESOPs"). (*Id.* ¶ 2, 6.) Mohagen is the President of Core Consulting. (*Id.* ¶ 3.) Core Consulting has its principal place of business in and Mohagen is a resident of Fargo, North Dakota. (*Id.* ¶ 2, 3.)

In October 2014, MSI reached out to Core Consulting to inquire about establishing an ESOP for MSI. (*Id.* ¶ 7; Doc. No. 19 ("Mohagen Aff.") ¶ 3.) On October 2, 2014, Jerry Mathwig ("Mathwig"), MSI's President, e-mailed Mohagen, stating, "I would be interested in hearing about your firm and if you have the ability and interest in the possibility of working with a [Minneapolis] firm for the possibility of an ESOP." (Mohagen Aff. ¶ 3, Ex. 1.) The same day, Mohagen responded expressing an interest in working with MSI. (*Id.*) Mohagen described Core Consulting's approach to ESOP transactions as "a hands on process" and explained that Core Consulting "look[s] to develop a long term relationship with the Company and its former shareholders" as part of the ESOP transaction and ongoing administration. (*Id.*) Mohagen wrote:

> Given that it is difficult to discuss the ESOP process and get a feel for how our firm would work with [MSI] without meeting in person, would you have time next week or the following week to meet at your office in Richfield[, Minnesota]? . . . We appreciate this opportunity to discuss ESOPs with you!

(*Id.*) Following this e-mail exchange, on October 10, 2014, Mohagen traveled to Minnesota to meet with Mathwig. (Mohagen Aff. ¶ 4.) Mohagen alleges that this meeting involved learning more about MSI and states that he did not perform any services for MSI or Mathwig on this date. (*Id.*) On October 13, 2014, Mohagen

2

contacted Mathwig by e-mail to follow up on the parties' October 10, 2014 meeting. (*Id.*, Ex. 2.) Mohagen wrote, "Core Consulting Group, LLC welcomes the opportunity to work with you and your management group in developing a sound succession plan for MSI . . . ." (*Id.*) Mohagen explained that he looked forward to working with Mathwig, MSI management, and MSI directors. (*Id.*) On October 14, 2014, Mathwig responded by e-mail, stating:

> I also enjoyed our meeting and learned a lot. As far as a joint project I am not in favor of a dual approach. I want when I have decided to do an ESOP to do it first and then get a quote on the other project. []So will you prepare a quote to fit my request and then I will give you the information and the contacts that you will need to do the work.

(*Id.*) On October, 15, 2015, Mohagen replied, "Thanks! I will respond to Steve[1] regarding the RFP for the 'base' feasibility and formation projects." (*Id.*)

On October 30, 2014, Core Consulting and MSI entered into a Consulting Agreement by which Core Consulting would provide specified services to MSI in connection with the formation of an ESOP. (Compl. ¶ 8, Ex. A ("First Consulting Agreement").) The agreement was to cover services rendered from October 30, 2014 to January 15, 2015, and MSI agreed to pay a fixed fee of $35,000. (Compl. ¶ 8; First Consulting Agreement at 2, 8.) On December 16, 2014, Core Consulting and MSI entered into a second Consulting Agreement covering the period from December 8, 2014 to January 30, 2015. (Compl. ¶ 9, Ex. B ("Second Consulting Agreement").) MSI agreed to pay a fixed fee of $25,000 in connection with this agreement. (Compl. ¶ 9;

---

[1]   Mathwig appointed Steve Zenz to be involved in the ESOP planning and transaction process. (Mohagen Aff. ¶ 7.)

Second Consulting Agreement at 2.) Both agreements provide that they are to be governed by North Dakota law. (Compl. ¶ 10.) Throughout the business relationship, Core Consulting proposed that the parties enter into at least five additional consulting agreements, but MSI declined those proposals. (*Id.* ¶ 13.) MSI alleges that "Core Consulting divides the agreements for the services it proposes into numerous different contracts in an effort to obscure the exorbitant amount of fees that it tries to collect from its clients and to make ESOP-related work appear vastly more complex than it is in reality." (*Id.* ¶ 14.)

In connection with both consulting agreements, Mohagen prepared feasibility analysis and services related to establishing an ESOP. (Mohagen Aff. ¶ 5, 6.) Mohagen alleges that the work was performed in North Dakota. (*Id.* ¶ 5.) Mohagen also frequently contacted Mathwig, Steve Zenz ("Zenz"), and Mike Nelson ("Nelson") in connection with the ESOP services from his office in Fargo, North Dakota. (*Id.* ¶ 7.) Mohagen asserts that he had nearly weekly telephone conferences totaling more than forty hours with Mathwig and others involved in the project from his business or home office in North Dakota. (*Id.* ¶ 12.) In addition, Mohagen estimates that he sent or received more than 900 e-mails relating to the project from his North Dakota offices. (*Id.* ¶ 13.) Mohagen alleges that all documents, schedules, and other written materials related to the consulting agreements—including the MSI ESOP schedules—were reviewed by Mohagen in North Dakota. (*Id.* ¶¶ 14-15.) Finally, Mohagen asserts that the tax research involved in his consulting work was performed in North Dakota. (*Id.* ¶ 16.)

Mohagen also traveled to Minnesota in connection with the MSI consulting agreements on a number of occasions. (*Id.* ¶ 8-11.) Mohagen was in Minneapolis for an ESOP Association seminar from January 21-24, 2015. (*Id.* ¶ 8.) On or about January 23, 2015, Mohagen met with Mathwig, Nelson, and Zenz in Minneapolis for a meeting and social lunch. (*Id.* ¶ 8.) On or about March 11, 2015, Mohagen met again with Mathwig, Zenz, and Nelson in Minneapolis for separate meetings—to discuss a possible merger between MSI and another company and to meet with the transaction trustee committee. (*Id.* ¶ 9.) On or about April 6, 2015, Mohagen met with Mathwig, Zenz, and Nelson in Minneapolis. (*Id.* ¶ 10.) During this visit, Mohagen also met again with the transactional trustees as well as Mathwig's three sons and his wife. (*Id.*) On or about April 28, 2015, Mohagen once again traveled to Minneapolis to accompany a representative of Acclaro Valuation Advisors, LLC, as this individual conducted an interview of MSI executives and an interview of the management of Mathwig's other business, NA Trading. (*Id.* ¶ 11.) The interview of MSI executives involved discussion of MSI business operations and MSI's facilities for valuations related to the ESOP transaction. (*Id.*) Mohagen estimates that the total time involved with all of these Minnesota meetings was approximately thirty hours. (*Id.* ¶ 8-11.) The invoices submitted along with the Complaint in this matter also document Core Consulting's consulting activities undertaken in Minnesota. (*See* Compl. ¶ 18, Ex. C ("Invoices").) Charges reflected in the invoices corroborate Mohagen's affidavit summarizing his activities in Minnesota, adding up to 41.5 hours and $14,535 in fees. (*See id.*)

On June 16, 2015, MSI terminated the business relationship after deciding that an ESOP would not be in MSI's best interests. (Compl. ¶ 15.) MSI has paid all of the fees required under the two consulting agreements. (*Id.* ¶¶ 12, 18.) On June 24, 2015, Core Consulting sent MSI eight invoices totaling $207,032.50 for services purportedly rendered between December 31, 2014 and May 23, 2015. (*Id.* ¶ 18; Invoices.)

MSI disputes the time spent and services performed as reported on the Invoices. (Compl. ¶ 20.) MSI also alleges that Core Consulting sent multiple separate invoices "in an effort to obscure the exorbitant amount of fees that it sought to charge and to make its purported work appear more complex and involved than it actually is." (*Id.* ¶ 19.) Mohagen and Core Consulting assert that the fees charged in the eight invoices were properly billed under a provision of the consulting agreements providing for consulting services outside the scope of the agreements. (*Id.* ¶ 22; First Consulting Agreement at 1-2; Second Consulting Agreement at 1-2.) MSI, on the other hand, alleges that the fees contradict a provision in the agreements stating that "Consultant will notify Client verbally or in writing when requested consulting services fall outside of the services rendered pursuant to Exhibit 1 of this Agreement." (Compl. ¶ 24; First Consulting Agreement at 2; Second Consulting Agreement at 2.) MSI alleges that it was never notified by Mohagen or Core Consulting that services were being provided outside the scope of the consulting agreements or that it was incurring fees beyond the $60,000 in fixed fees. (Compl. ¶ 25.)

MSI claims that the typical cost for the work completed by Mohagen and Core Consulting "is a fraction of the $60,000 amount that MSI actually paid to Mohagen and

6

Core Consulting, and an even smaller fraction of the more than $260,000 that they have billed to MSI." (*Id.* ¶ 29.) MSI alleges that Mohagen's failure to inform MSI of the extra fees being incurred violates North Dakota Rule of Professional Conduct 1.4(a). (*Id.* ¶ 26.) MSI further alleges that Mohagen and Core Consulting have violated North Dakota Rule of Professional Conduct 1.5(a) through their billing practices which result in unreasonable fees. (*Id.* ¶ 28.)

MSI alleges that it "never would have considered an ESOP in the first instance or spent the $60,000 that it already paid to Core Consulting if Core Consulting had properly and timely advised MSI of the advantages and disadvantages of an ESOP." (*Id.* ¶ 16.) MSI further alleges that "Core Consulting and Mohagen's recommendation of an ESOP to MSI was motivated by a desire to earn fees for professional services, rather than by a proper and informed assessment of MSI's best interests." (*Id.* ¶ 17.)

MSI filed this action on August 7, 2015, asserting two causes of action: (1) breach of fiduciary duty; and (2) a claim seeking a declaratory judgment that it is not contractually obligated to pay the fees charged in the invoices and, alternatively, that if the agreements require such payment, they are unconscionable and void under North Dakota law. (*Id.* ¶¶ 30-38.) On December 8, 2015, Defendants filed the Motion to Transfer Venue currently before the Court. (Doc. No. 16.) Defendants seek an order transferring this case to the United States District Court, District of North Dakota, Southeastern Division in Fargo, North Dakota. (*Id.* ¶ 1.) MSI opposes the motion. (Doc. No. 27.)

**DISCUSSION**

Defendants assert that venue in this district is improper and ask the Court to transfer the case to the United States District Court, District of North Dakota, in Fargo, North Dakota. Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district" may transfer the case to a proper venue. 28 U.S.C. § 1406(a). Under 28 U.S.C. § 1391(b), venue in cases based on diversity is only appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The burden of proof is on the party claiming improper venue. *See United States v. Orshek*, 164 F.2d 741, 741-42 (8th Cir. 1947) (placing the burden of proof on defendants who filed a motion to dismiss for improper venue).[2]

Here, the parties dispute the application of subsection 1391(b)(2)—whether "a substantial part of the events or omissions giving rise to the claim occurred" in the

---

[2] The parties appear to dispute who carries the burden in this matter. Indeed, the Circuit Courts of Appeal are split on this issue. However, the Court will follow *Orshek* which placed the burden on the defendants who had filed a motion to dismiss for improper venue. *See Orshek*, 164 F.2d at 742; *see also Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, Civ. No. 09-720, 2009 WL 1684428, *2 n.2 (D. Minn. June 16, 2009) (noting the Circuit split and following the Eighth Circuit's opinion in *Orshek*).

District of Minnesota. *See* 28 U.S.C. § 1391(b)(2).[3] More than one district may be proper under this subsection, "provided only that a substantial part of the events giving rise to the claim occurred there." *Steen v. Murray*, 770 F.3d 698, 702 (8th Cir. 2014) (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). And the Court should not "ask which district among two or more potential forums is the 'best' venue." *Id.* (quoting *Setco Ent. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)). The Eighth Circuit has explained that "[o]ne of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'" *Woodke*, 70 F.3d at 985 (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). In addition, the Eighth Circuit recently clarified the proper scope of the court's inquiry, stating that "[Section 1391(b)] protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" *Steen*, 770 F.3d at 703 (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)). The court explained that courts need not "*only* consider the defendant's allegedly wrongful activities." *Id.* However, "the court's *focus* must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Id.*

Here, MSI's claims against the Defendants arise from the parties' business relationship, the contractual relationship formed by the two consulting agreements, and the Defendants' consulting work completed in connection with establishing an ESOP for

---

[3] Neither subsection (1) nor subsection (3) applies to this venue dispute. Thus, the Court need not analyze these bases for venue in its analysis of Defendants' motion.

9

MSI.  Specifically, MSI alleges that the Defendants breached their fiduciary duties by "recommending services and courses of action that were not in the best interests of MSI, attempting to charge MSI amounts vastly in excess of the flat fees that MSI agreed to pay, and failing to communicate to MSI that it was purportedly incurring such fees."  (Compl. ¶ 32.)  MSI further alleges that Mohagen and Core Consulting's billing practices violated the North Dakota Rules of Professional Conduct.  MSI also disputes its contractual obligation to pay the disputed fees and argues that the agreement is unconscionable and void under North Dakota law if MSI is required to pay those fees.

In light of these claims and focusing on the Defendants' relevant activities in the forum state, Mohagen traveled to Minnesota to begin the business relationship in October 2014 and on at least four occasions to complete work for MSI within the scope of the parties' agreements.[4]  Although MSI reached out to Core Consulting to initiate the business relationship, Mohagen was the one to specifically recommend that the parties meet in person in Minnesota "to discuss the ESOP process and get a feel for how [Core Consulting] would work with [MSI]."  (Mohagen Aff. ¶ 3, Ex. 1.)  This meeting took place on October 10, 2014.  Following this meeting, the parties began to work with one

---

[4] *Steen* suggests that whether a defendant traveled to the forum state is a relevant and possibly dispositive factor in the Court's inquiry.  *See* 770 F.3d at 704.  *Steen* involved a malpractice action brought by Iowa residents against a Nebraska law firm and its attorneys.  *Id.* at 700.  In finding Iowa to be an improper venue, the court explained that "[t]he alleged malpractice—drafting option and purchase agreements that improperly favored [the buyer], either negligently or by design—was entirely performed in Nebraska.  [Plaintiffs] do not allege, and [defendants] specifically deny, traveling to Iowa in connection with the negotiation or execution of the agreements." *Id.* at 704.  Based on these facts, *Steen* is factually distinguishable and does not control the Court's conclusion in this case.

another to clarify the scope of work to be provided.  And just a few weeks after this in-person meeting, on October 30, 2014 the parties executed the First Consulting Agreement which would govern the terms of the parties' contractual relationship.  On December 16, 2014, the parties entered into the Second Consulting Agreement.  Although both agreements contemplated that the covered services would conclude in January 2015, the disputed invoices demonstrate that Mohagen performed services for MSI beyond this date and throughout 2015.  The record demonstrates that Mohagen traveled to Minnesota in connection with this work on multiple occasions in January, March, and April 2015.  And as documented on the disputed invoices, these visits added up to over forty-one hours of billed time and $14,535 in fees, roughly one quarter of the amount of fixed fees MSI originally agreed to pay.  These fees, along with the remaining fees incurred in North Dakota, are at the heart of MSI's claims against the Defendants.  In addition, MSI alleges Mohagen breached his fiduciary duty by failing to properly inform MSI of the benefits and drawbacks of an ESOP.  It is likely that such failure occurred in part at the parties' first in-person meeting in Minnesota which Mohagen initiated to "discuss the ESOP process." (*Id.*)  Mohagen's activities in Minnesota were not an insubstantial part of the parties' business relationship, and the Court concludes that these activities gave rise to MSI's claims.  As a result, venue is proper in the District of Minnesota, and the Court declines to transfer the case.

Although the Court believes it is clear that the District of North Dakota would also be a proper venue in which to hear this dispute given Mohagen's consulting services performed in North Dakota, the District of Minnesota is not "a remote district having no

11

real relationship to the dispute" between MSI and the Defendants. *See Woodke*, 70 F.3d at 985 (quoting *Cottman*, 36 F.3d at 294). It is not the Court's role to determine the "best" forum in which this case should be heard. *Steen*, 770 F.3d at 702 (quoting *Setco*, 19 F.3d at 1281). Rather, the Court is simply obligated to determine if venue is proper under 28 U.S.C. § 1391(b)—specifically whether "a substantial part of the events or omissions giving rise to the claim occurred" in the District of Minnesota. *See* 28 U.S.C. § 1391(b)(2). Given Mohagen's activities within Minnesota and the relationship between those activities and MSI's claims, the Court concludes that venue in this district is proper.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Defendant's Motion to Transfer Venue (Doc. No. [16]) is **DENIED**.

Dated:  March 7, 2016                             s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge

12